UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD SAXBY,

                                        Plaintiff,

                                                                    <u>DECISION AND ORDER</u>

                                                                    11-CV-6505L

                v.

LPS FIELD SERVICES, INC.,

                                        Defendant.
_____

## I.  <u>INTRODUCTION</u>

Plaintiff Richard Saxby ("plaintiff") was injured when he fell off a roof on June 23, 2010 while making property repairs at 2072 Dewey Avenue, Rochester, New York.  A company owned and operated by Saxby, Finger Lakes Property Services, had been engaged, through several intermediary contractors, to perform the repairs.  The Dewey Avenue property had been in mortgage foreclosure and was in the possession of the lender, First Union Corporation ("First Union").

In anticipation of a foreclosure sale, First Union contracted with LPS Field Services ("LPS") to perform "property preservation services."[1]  These services included, but were not limited to, lock changes, securing, boarding, winterizing, lawn maintenance and debris removal.  Def.'s Ex. A. (Dkt.# 7-1).  In turn, LPS contracted with A-1 Property Services ("A-1"), which in turn engaged East Coast Property Services, who then hired Saxby and his company, Finger Lakes Property Services.

---

[1]Although the contract was between Fidelity National Field Services, Inc. and First Union Corporation, the former subsequently became LPS Field Services in June 2007.  (Dkt.# 7).

Saxby alleges in his complaint that LPS is in the business of repairing and preserving properties. Specifically, it employs a "technology interface" to pair homeowners with perspective contractors. LPS is incorporated in Delaware with its apparent principal place of business in Ohio. LPS' agreement with A-1 identifies A-1 Property as the "Independent Contractor," and provides:

> d. Independent Contractor acknowledges and agrees that it is acting as an Independent Contractor and not as an employee or agent [LPS Field Services] and as such Independent Contractor will be solely responsible for the work to be performed and, other than receiving the request and description of work from [LPS Field Services], [LPS Field Services] does not have control of or direct the work to be done..."

The Dewey Avenue property was allegedly "in distress, needed repairs, maintenance, construction, preservation, and/or refurbishing." Per LPS' Work Order, approval had been given to complete a three-page punch list of interior and exterior repairs. (Dkt.# 11-4). Specific authorization had been given to repair the chimney, and it was during his repair of the chimney that Saxby's fall took place. *Id.* at 2 ("Bid to mortar repair around the damaged chimney").

To recover for his injuries, Saxby commenced two lawsuits in state court. In the first, filed on November 4, 2010, Saxby sued two individuals, A-1, East Coast Properties, and three other subcontractors not parties to this action, alleging that they failed in their duties of managing a "construction site" by virtue of their not providing safe and proper equipment. That lawsuit remains pending in Ontario County Supreme Court, New York.

On September 7, 2011, Saxby sued LPS in a separate action, making the same allegations of negligence (Count I) and violations of New York Labor Law §§ 200, 240, and 241 (Count II). Saxby seeks to hold LPS liable for "negligent hiring" of A-1, and for otherwise failing to oversee the property preservation services. On the basis of diversity, LPS removed the action to this Court on October 13, 2011. Shortly thereafter, on October 27, 2011, LPS filed the present Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6).

## II.   <u>DISCUSSION</u>

On a Rule 12(b)(6) motion, the Court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994).  However, "a plaintiff's obligation ... requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   Accordingly, the plaintiff has incorporated into his complaint LPS' agreements with First Union and A-1.  Pl. Compl. at ¶¶ 12, 14 (Dkt.# 1-1).

### A.   <u>Common Law Negligence Claims</u>

I find that plaintiff has sufficiently pleaded common law negligence claims, because he has plausibly alleged that "the defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as a proximate result of that breach." *King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997).  Plaintiff alleges that LPS was the "contractor and/or general contractor and/or agent who controlled, supervised, and/or managed the repairs for the property in question."  He also alleges that LPS was negligent in the hiring, engaging, and/or contracting with A-1.  Finally, he alleges that LPS "controlled, supervised, and/or managed the said repairs, maintenance, preservation, construction, and/or refurbishing work...." (Dkt. #1-1).

To support his allegations, the plaintiff refers to LPS' agreement with First Union in which LPS warrants that its' services will be performed in a "workmanlike manner in accordance with the Specifications or Work Orders and the prevailing reasonable commercial standards applicable thereto." (Dkt.# 7-1, at 3).  Furthermore, the agreement between LPS and A-1 appears to establish a general-independent contractor relationship between the parties. (Dkt.# 7-2).  Finally, the three-page Work Order attached to Plaintiff's Memorandum in Opposition confirms that LPS set forth the

specific terms of the preservation project in question, and questions about the work were directed to LPS directly.

Although LPS attempts to cast doubt on the merits of the plaintiff's claims, such arguments are misplaced on a motion to dismiss.  It is sufficient at this stage that the plaintiff has plausibly alleged the basic elements of a common law negligence claim.

However, to the extent that plaintiff has also attempted to assert a claim of negligent hiring, that claim is insufficiently stated and is dismissed.  Generally, for liability to be possible under a theory of negligent hiring, the plaintiff must stand in an agency relationship, as opposed to "one merely of an employer-independent contractor." *Corazzini v. Litton Loan Servicing LLP*, 2010 U.S. Dist. LEXIS 27398 at *23 (N.D.N.Y. 2010).  While a defendant may be directly liable for negligently selecting an independent contractor, recovery is only permitted when a "third party" is injured.  *See Jones v. United States*, 399 F.2d 936, 941 (2d Cir. 1968).[2]

Here, plaintiff not only fails to plausibly allege that he was an injured third party, but he effectively pleads to the contrary.  Specially, he alleges that "[u]pon information and belief, at some time prior to June 23, 2010, one or more of the following ... then contracted with Finger Lakes Property Services and/or the Plaintiff, RICHARD SAXBY."  (Dkt.# 1-1).  Furthermore, he alleges that "the plaintiff RICHARD SAXBY is the sole proprietor of Finger Lakes Property Services." Id. at ¶17.  As a result, the plaintiff has failed to state a negligence claim, because he was contracted by an independent contractor and thus was not a third party.

**B.     N.Y. Labor Law § 200**

I find that plaintiff has sufficiently pleaded a violation of N.Y. Labor Law §200 because he plausibly alleges that LPS is an owner or contractor who exercised control or supervision over the

---

[2]The justification for denying recovery to employees of an independent contractor is that they are covered by workmen's compensation insurance, the cost of which is presumptively included in the contract price. *See Lipka v. United States*, 369 F.2d 288, 293 (2d Cir. 1966).

work being performed. *See e.g., Brown v. Brause Plaza, LLC*, 798 N.Y.S.2d 501, 501 (2d Dept. 2005). To exercise control or supervision, a defendant can supervise the method and manner of the work, order changes in the specifications, review the progress and details of the job with the general contractor, and/or provide the equipment necessary to perform the work. *See Rimoldi v. Shanzer*, 537 N.Y.S.2d 839 (2d Dept. 1989) (relating to New York Labor Law §§ 240(1) and 241(6)).

The plaintiff has set forth sufficient factual allegations, at this stage, to plausibly suggest an entitlement to relief. Specifically, the agreement between LPS and First Union could be read to suggest that LPS was acting as an "agent" of the bank/landowner, in the manner alleged in the plaintiff's complaint. (Dkt.# 1-1 at ¶ 16 ). Alternatively, the agreement between LPS and A-1 suggests that LPS was acting as a general contractor in its engagement with independent subcontractors. (Dkt.# 7-2). While LPS denies that it exerted any direction or control over its property preservation assignments, LPS' agreements with First Union and A-1, coupled with its open lines of the communication with the work site, lend sufficient plausibility to plaintiffs' Labor Law §200 claim for it to survive dismissal.

## C.    N.Y. Labor Law § 240

The plaintiff has sufficiently pleaded a violation of N.Y. Labor Law §240 because he has plausibly alleged that LPS is a contractor, owner, or an agent thereof, who has the power to enforce safety standards and choose responsible subcontractors, and that LPS failed to provide sufficient protective devices and measures at the worksite. *Chimbay v. Avalonbay Cmtys.*, *Inc.*, 742 F. Supp. 2d 265, 273 (E.D.N.Y. 2008). Unlike the plaintiff's prior causes of action, N.Y. Labor Law §240 imposes a nondelegable duty on owners and contractors. *Id.* The key criterion in determining whether a party is an "agent thereof" is "the right to insist that proper safety practices were followed, not necessarily the actual exercise or nonexercise of control." *Id.*

Plaintiff alleges that LPS was acting as an agent of the bank/landowner, because the agreement between LPS and First Union specifically charged LPS with carrying out property

preservation work on behalf of the bank.  (Dkt.# 7-1).  Furthermore, LPS's contract with A-1 and the detailed work order that issued from LPS support the allegation that LPS had  authority, at least in theory, insist on proper safety measures at the worksite on First Union's behalf.

Nonetheless, LPS argues that it cannot be an agent within the meaning of the statute, because it was not delegated to supervise and control the work giving rise to the duties imposed under the Labor Law.  Although LPS argues that it did not, in point of fact, have the practical ability to impose safety standards, such argument is misplaced on a motion to dismiss.  Furthermore, given the nondelegable nature of a defendant's obligations under Labor Law §240, it is sufficient at this juncture that the plaintiff merely allege that LPS was acting as an agent of a landowner that possessed the *right* to insist on proper safety measures.[3]

D.    **NY Labor Law § 241(6)**

The plaintiff has sufficiently pleaded a violation of N.Y. Labor Law §241(6), which covers industrial accidents, because he has plausibly alleged that the accident occurred in the context of construction, demolition, and excavation.  *See Nagel v. D & R Realty Corp.*, 782 N.E.2d 558, 561 (Ct. App. 2002).  Unlike a defendant's duty under common law negligence, a contractor may be liable to an injured worker under Labor Law §241(6) even absent evidence of control or supervision of the injury-producing event.  *See Locicero v. Princeton Restoration, Inc.*, 811 N.Y.S.2d 673, 676 (2d Dept. 2006).

To support his allegation that he was involved in "construction, demolition or excavation at the time of the accident," *Dilena v. Irving Reisman Irrevocable Trust*, 263 A.D.2d 375, 376 (1st Dept. 1999), plaintiff relies upon the New York Code's definition of "construction work" as "[a]ll work

---

[3]The New York Court of Appeals has explained that the purpose of Labor Law §240 is to protect workers and to impose the responsibility for safety practices on those *best situated* to bear that responsibility. *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 618 N.E.2d 82, 85 (Ct. App. 1993) (emphasis added).

of the types performed in the construction, erection, alteration, *repair*, maintenance, painting, or moving of buildings or other structures." 12 NYCRR 23-1.4 (emphasis added). As a result, plaintiff maintains that the "construction repair work" he was undertaking at the time he was injured falls within the purview of §241(6). While acknowledging the unsettled and unpredictable nature of state and federal cases addressing the definition of "construction work" under the applicable provisions of the New York Code, accepting plaintiff's allegations as true and construing all inferences in his favor for purposes of this motion, I find that plaintiff has adequately alleged that he was engaged in "construction . . . at the time of the accident." *See generally Joblon v. Solow*, 135 F.3d 261, 263-264 (2d Cir. 1998) (discussing conflicting and inconsistent results in cases concerning the New York Code's definition of construction work).

Although there is some disagreement among courts addressing the issue, some courts have held that, in order to state a claim pursuant to Section 241(6), a plaintiff must also plead a violation of a "concrete specification" of the Industrial Code of the State of New York. *See Hernandez v. GPSDC (New York) Inc.*, 2006 U.S. Dist LEXIS 9172 at *57-*58 (S.D.N.Y. 2006) (collecting cases and declining to dismiss Section 241(6) claim where defendant had notice of the claimed Industrial Code violations from interrogatory answers served on another party). In ¶29 of his complaint, plaintiff alleges only generalized violations of "Sections 200, 240, and 241 of the Labor Law of the State of New York, *the applicable provisions of the Industrial Code of the State of New York,* and such other standards, rules..." (Dkt. #1-1, emphasis added). Plaintiff asks the Court to take notice of his Response to Interrogatories in the state court action against A-l, wherein he lists ten specific provisions of the Industrial Code which he contends were violated. (Dkt.# 12). Because LPS now has those responses and has not articulated any prejudice therefrom, and given the split of relevant authorities and the Court's preference for resolution of the plaintiff's claims on the merits, I find that plaintiff's claims Labor Law §241(6) may proceed. To the extent that plaintiffs' reliance on his Response to Interrogatories may be read as a request to amend the complaint to specify the portions of the Industrial Code alleged to have been violated, that request is granted.

### III.   CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss, (Dkt.# 5), is granted in part and denied in part.  Plaintiff's claim of negligent hiring is dismissed, and insofar as the motion seeks to dismiss the remainder of plaintiff's claims, it is denied.  Plaintiff is granted leave to amend the complaint, for the sole and limited purpose of setting forth those portions of the Industrial Code alleged to have been violated by LPS, and plaintiff is directed to file and serve the Amended Complaint within twenty (20) days of entry of this Decision and Order.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
November 5, 2012.